# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>  v.<br><br>$4,543.79 IN FUNDS SEIZED FROM BANK ACCOUNT #153568031006 IN THE NAME OF CARLETON P. NELSON AND AMY S. NELSON AT U.S. BANK,<br><br>$8,388.54 IN FUNDS SEIZED FROM BANK ACCOUNT #1635892407 IN THE NAME OF AMY STERNER NELSON AT WELLS FARGO,<br><br>$13,559.97 IN FUNDS SEIZED FROM BANK ACCOUNT #1361410762 IN THE NAME OF E2M PROPERTIES LLC AT CAPITAL ONE BANK,<br><br>$25,343.01 IN FUNDS SEIZED FROM BANK ACCOUNT #145947373 IN THE NAME OF CARLETON NELSON AT CITIBANK,<br><br>$98,358.92 IN FUNDS SEIZED FROM BANK ACCOUNT #149656681 IN THE NAME OF CARLETON NELSON AT CITIBANK,<br><br>$491,780.50 IN FUNDS SEIZED FROM ACCOUNG ENDING 5810, HELD ON BEHALF OF AMY STERNER NELSON AND CARLETON P. NELSON, AT SIGNATURE BANK,<br><br>$10,567.43 IN FUNDS SEIZED FROM BANK ACCOUNT #104781237441 IN THE NAME OF DEVON P. KIRSCHNER AND CASEY H. KIRSCHNER AT U.S. BANK, | Civil Action No.  1:20-cv-1343 |

$1,217.05 IN FUNDS SEIZED FROM BANK
ACCOUNT #320013539278 IN THE NAME OF
AMY S. NELSO AND CARLETON PHILLIP
NELSON AT AMERICAN EXPRESS
NATIONAL BANK,

and

$4,284.47 IN FUNDS SEIZED FROM BANK
ACCOUNT #1518835838 IN THE NAME OF
AMY S. NELSON AND CARLETON PHILLIP
NELSON AT AMERICAN EXPRESS
NATIONAL BANK,

                           Defendants In Rem.

## **RESPONSE OF CLAIMANTS AMY NELSON AND CARLETON NELSON IN OPPOSITION TO MOTION FOR A STAY BY THE UNITED STATES, E2M PROPERTIES, AND CASEY KIRSCHNER**

A year after opening its investigation, ten months after informing Carleton Nelson he was a target of that investigation, and eight months after seizing the life savings of a family with four girls under the age of seven, the Government now seeks a stay of the case it just filed seeking civil forfeiture of $633,916.28 from six accounts belonging to Mr. Nelson and his wife Amy, and a seventh account that was the trust account for Mr. Nelson's lawyers.  Relying on 18 U.S.C. § 981(g) and an ex parte affidavit from an FBI Special Agent, the Government claims that <u>any</u> discovery in this matter "would have an adverse impact on a pending criminal investigation."  Mot. at 2, ECF No. 20.  In addition, it raises the prospect "that engaging in discovery may burden [the] Fifth Amendment rights" of two other Claimants with comparatively small interests in seized bank accounts in which the Nelsons have no interest or ownership.  Mot. at 4.

There are a slew of cases and a variety of circumstances in which the Government's assertions would be sufficient.  And there are many instances in which the Government has successfully urged courts to accept sealed and untested assertions from agents or prosecutors about

1

the obstacles that civil discovery might pose to a criminal investigation. Often in those cases, the Government has been able to stave off all civil discovery.

But this case is different in a number of critical respects about which the Government has chosen not to alert the Court. First, the Government's brief gives the impression that the nature of the investigation is a mystery, that discovery would reveal its scope, and that the Court must assist the Government in shielding those details from the subjects and targets. Nothing could be further from the truth.

For example, although both the Government's Complaint and its motion anonymize the victim of the alleged fraud as "Company #1," the identity of Company #1 is no secret: it is Amazon, Carleton Nelson's former employer. More important, the Government's decision to file a sealed, ex parte affidavit creates the misimpression that the investigation's details are also a secret. They are not. In fact, Amazon and Mr. Nelson are already embroiled in very public litigation arising out of these facts in two different forums: *Amazon.Com, Inc. v. WDC Holdings LLC*, 1:20-cv-00484 (E.D. Va. Apr. 27, 2020) ("the Amazon lawsuit'), and *Nelson v. Amazon.com, Inc., et al*, No. 20-2-15535-7 (Wash. Sup. Ct. Oct. 21, 2020) ("the Nelson lawsuit"). Additionally, there is a related suit in Delaware: *W.D.C. Holdings, LLC v. IPI Partners, LLC*, C.A. No. 2020-1026 (Del. Ch. Ct. Dec 7, 2020). This Court has already found that the allegations in the lawsuit that Amazon brought in this District in April 2020 are "essentially the same subject matter that led to the FBI's search warrant." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484, 2020 WL 4353563, at *4 (E.D. Va. July 28, 2020). Since the Court made that observation, the overlap has become even more significant as Amazon's amended complaints have become more comprehensive and detailed. Indeed, over the past nine months, Amazon has filed three amended complaints, and each version has included more and more references to the Government's

investigation, including descriptions of the real estate transactions identified in the forfeiture complaint, the names of individuals under investigation, and accounts of hours of recorded conversations among those same individuals.

The Government, as is its custom, enhances the aura of confidentiality by repeatedly using numbers throughout the forfeiture complaint and the motion to stay to anonymously describe almost all of the individuals or entities—such as "Person #[]" or "Company #[]"—who participated in or were responsible for the transactions that the Government is investigating. But that anonymity is an illusion, because Amazon's amended complaints provide a handy and publicly available reference guide to identify virtually every one of those entities and individuals. The ensuing detailed press coverage of Amazon's legal maneuvers has only further undercut the Government's pretense that discovery will compromise the Government's investigation. In a word, much of what the Government purports to hide is already in the public domain.

To be fair, the Claimants are not accusing the Government of putting that information out there, although the timing of certain actions by Amazon may well be reason for inquiry later. But the Government cannot pretend that many details of its investigation are private, and it certainly cannot suggest that any and all discovery will get in the way.

Moreover, the import of the wealth of information in the public arena is that the Court cannot take the Government's statements and implications about the confidentiality of its investigation at face value. To the contrary, the Court must bring some serious measure of skepticism and a critical eye to the Government's sealed, ex parte affidavit and the assertions it contains.

As a result, the Government's solution of a blanket stay is far broader than the circumstances justify. It is true that courts often grant stays where "civil discovery would subject

the government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding.'"  *United States v. $160,280.00 in U.S. Currency*, 108 F. Supp. 3d 324, 326 (D. Md. 2015) (quoting *United States v. All Funds in Suntrust Account Number XXXXXXXX8359, in Name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d 64, 65-66 (D.D.C. 2006)).  But as the court noted in *$160,280.00*, the real risk—and the "early and broader civil discovery" to which the caselaw uniformly refers—comes from the interrogatories and depositions that are not available in the criminal context, either before or after indictment.  *Id.* at 66.

Here, however, the Nelsons are not proposing such broad discovery at this juncture. Rather, the Court could and should allow the parties to engage in document production.  Given the detail of the Amazon complaints—including their extensive description of particular real estate and financial transactions involving Amazon and other parties—the Government cannot seriously suggest to this Court in good faith that providing the underlying and related documents would compromise its investigative efforts at all.  And to the extent that the revelation of particular documents would expose some information prematurely, the Government can make appropriate redactions with permission from the Court.

Nor would such a graduated approach to discovery impinge at all on the Fifth Amendment rights of the other claimants.  To the contrary, as in most civil litigation, any prospect of depositions will await the full exchange of documents, and the Court can revisit that issue at the appropriate time.  And, in any event, it may well turn out that the testimony of those two Claimants may be unnecessary or irrelevant to the Nelsons' entitlement to the return of their money.  At the very least, such an assessment is premature.

In short, it is difficult to conceive that the ex parte affidavit from Special Agent Combs can justify a stay of all discovery to protect the investigation, or the secrecy of witnesses and evidence. Indeed based on the overbroad anonymization used in the complaint, the Nelsons reasonably believe that Special Agent Combs' affidavit has taken a similar overbroad approach as to what constitutes "secrecy." Even so, the Nelsons are not seeking unfettered civil discovery in this forfeiture proceeding. Rather, they suggest that the appropriate and fair outcome is for the Court to impose a protective order and permit document discovery to proceed pursuant to 18 U.S.C. § 981(g)(3).[1]

## I.    RELEVANT BACKGROUND

### A.    The Government's Seizure of the Nelsons' Funds

For more than a year, the Government has been investigating whether former employees of Amazon, including Mr. Nelson, conspired with other individuals in commercial real estate business to defraud Amazon of the employees' honest and faithful services. The investigation largely centers on several transactions for land in Northern Virginia on which Amazon currently owns, leases, or is building data centers that produce tens of millions of dollars in revenue every month from the sale of cloud computing services. Notably, Amazon has suggested Mr. Nelson's actions constituted an undisclosed conflict of interest, which the Supreme Court has explicitly held does not qualify as honest services fraud. *Skilling v. United States*, 561 U.S. 358, 409-10 (2010).

Mr. Nelson first learned of the investigation on April 2, 2020, when FBI agents arrived unannounced at his house in Seattle, in the middle of the pandemic, and informed him that he is the target of a federal investigation in the Eastern District of Virginia. The agents also served

_____

[1] The Nelsons request that forfeiture case proceed with their claims only. They do not oppose a stay with respect to the claims of Casey Kirschner or EM2.

several grand jury subpoenas, as well as separate correspondence stating the Government's intent to seize funds allegedly traceable to criminal activity related to Mr. Nelson's work for his former employer Amazon.

Mr. Nelson swiftly retained MoloLamken LLC ("MoloLamken" or in the Complaint, "Business #1") as counsel in connection with the investigation. On April 16, 2020, the United States Attorney's Office ("USAO") provided attorneys from MoloLamken with a presentation of its investigation to date. In May, Mr. Nelson's counsel requested the opportunity to make a responsive presentation to the USAO, and his lawyers scheduled that meeting for May 26, 2020.

On May 22, without waiting to hear Mr. Nelson's side of the story, the Government seized funds from six bank accounts owned or co-owned by Mr. Nelson and his wife. On May 26, Mr. Nelson's lawyers met with the Assistant United States Attorneys ("AUSAs") and the agents handling the investigation for more than two hours. Among other topics, Mr. Nelson's defense attorneys explained that they had already received a $750,000 retainer by wire from the Nelsons and had already billed for services against those funds. Neither the agents nor the AUSAs mentioned any interest in that money.

Nonetheless, two days later, the Government seized that $750,000 from MoloLamken's client trust account (the seventh account to which the Nelsons have filed a claim). After some discussions about the propriety of that action, the Government remitted $258,219.50 on June 2, 2020.

On June 5, the FBI again showed up unannounced to search the Nelsons' home in the presence of Mr. Nelson, his wife, and their four daughters— then ages 5, 3, 2, and 9 months. They stayed for less than an hour, during which they seized Mr. Nelson's mobile phone, laptop, and

various paper documents. Even though the agents knew Mr. Nelson was already represented by counsel, they asked for the laptop's password, which he provided.

In total, the Government seized $892,135.78 of the Nelsons' funds from seven different accounts, of which it continues to hold $633,916.28. Although the purported basis for the seizure is that some of those funds are the proceeds of alleged fraud, the accounts also variously contained (1) Amy Nelson's salary and other earnings from a company where she serves as Chief Executive Officer ("CEO"); (2) Mr. Nelson's wages earned from his employment at Amazon; (3) proceeds from Mr. Nelson's sale of certain Amazon stock options that were a substantial portion of his compensation during his seven-year tenure at the company; and (4) consulting fees that Mr. Nelson earned after he left Amazon in June 2019. In addition, the Nelsons had planned to use $125,000 of the seized funds to pay their 2019 income tax obligations.[2]

There are funds from two other accounts that are the subject of the forfeiture complaint. Neither of those accounts have anything to do with the Nelsons and they have filed no claims to them. Rather, a corporate entity—E2M—has filed a claim for one account containing $13,559.97, and Casey Kirschner has filed a claim for an account holding $10,567.43.

Both E2M and Kirschner have consented to stay these proceedings. The Nelsons, however, have a much more substantial stake and oppose the Government's application.

### B.      The Amazon Lawsuit

On April 27, 2020, less than a month after the FBI visited the Nelsons' home to serve the target letter, Amazon filed suit in the Eastern District of Virginia against eleven defendants, including Northstar Commercial Partners, Brian Watson, White Peaks, and NOVA WPC.

---

[2] Because of the COVID-19 pandemic, that payment was not due until July 15, 2020.

Amazon's complaint alleged an association-in-fact RICO enterprise that profited from fraud and kickbacks related to certain real estate transactions in which Amazon had been involved.

Amazon has since amended its complaint three times. The first amendment added Mr. Nelson, Mr. Kirschner, and three corporate defendants, as well as an allegation that Mr. Nelson and Mr. Kirschner violated the federal Robinson-Patman Antitrust Act by rigging commercial real estate markets in Northern Virginia.

Remarkably, Amazon predicated a substantial portion of those initial allegations against Mr. Nelson—and presumably all of its initial discussions with the Government—on an employment contract that had nothing to with him. *WDC Holdings LLC*, 1:20-cv-00484 (July 31, 2020), Dkt. 100. Apparently, despite the gravity of the accusations, Amazon had somehow confused Mr. Nelson with another employee with a different name, email address, and employee number who had signed an entirely different employment contract with different terms regarding outside income. *WDC Holdings LLC*, 1:20-cv-00484 (Sept. 1, 2020), Dkt. 130.

Despite the seriousness of that error, Amazon initially resisted amending its complaint and insisted instead that Mr. Nelson respond to the original pleading. Mr. Nelson was forced to seek relief from this Court. *WDC Holdings LLC*, 1:20-cv-00484 (Sept. 4, 2020), Dkt. 138. As a result, in September 2020, Amazon filed its third amendment, which finally cited the correct contract. *WDC Holdings LLC*, 1:20-cv-00484 (Sept. 18, 2020), Dkt. 150. (The complaints between Amazon and the Nelsons are attached as Exhibits 1-5.)

While the Government's investigation has been going on, over the past nine months, the Amazon lawsuit has involved extensive motion practice with more than 268 docket entries and hearings concerning a temporary restraining order, a preliminary injunction, discovery, the identity of confidential informants, and more. (The docket is attached as Exhibit 6.) As part of that process,

and with the Government's full knowledge, subjects and targets of the investigation produced more than 100,000 pages of documents and answered numerous interrogatories..

For its part, Amazon's filings have shared detailed information about the Government's investigation. Those disclosures have included, for example: (1) a statement in Amazon's complaint that the Government's investigation was "ongoing" prior to February 19, 2020 (*WDC Holdings LLC*, 1:20-cv-00484 at ¶ 272 (Sept. 18, 2020), Dkt. 150); (2) May and June 2020 filings with letters from Christian Kirschner's and Kyle Ramstetter's attorneys stating that both are "cooperating" with the Government's investigation and that Mr. Ramstetter had forfeited related funds (*WDC Holdings LLC*, 1:20-cv-00484 (May 18, 2020), Dkt. 42-1; *WDC Holdings LLC*, 1:20-cv-00484 (June 3, 2020), Dkt. 54-3); (3) a separate statement from Amazon in a July 2020 motion that "the former Northstar employees"—Will Camenson and Mr. Ramstetter—are "cooperating" with the Government's investigation (*WDC Holdings LLC*, 1:20-cv-00484 (July 15, 2020), Dkt. 84); (4) confirmation in a motion by Amazon to hold Mr. Watson in contempt for failing to post a court-ordered $21 million preliminary injunction bond that the "United States Attorney" had seized more than $3 million from Mr. Watson on May 7, 2020 (*Id.*); (5) statement by Amazon's counsel at a hearing on May 21, 2020 concerning "$5 million in proceeds that the U.S. government has now seized from" the sale of a property that is at issue in the Government's investigation (*WDC Holdings LLC*, 1:20-cv-00484 (July 2, 2020), Dkt. 69-5); (6) the inclusion of entire, years' long WhatsApp chats among Mr. Ramstetter, Mr. Casey Kirschner and Mr. Nelson in Amazon's opposition to Mr. Nelson's motion to transfer the case to Washington (*WDC Holdings LLC*, 1:20-cv-00484 (Nov. 9, 2020), Dkts. 212-16, 17); and (7) audio recordings that Mr. Ramstetter made of conversations with subjects of the investigation such as Mr. Watson and Mr. Nelson (*WDC*

*Holdings LLC*, 1:20-cv-00484 (May 18, 2020), Dkt. 45; *WDC Holdings LLC*, 1:20-cv-00484 (Nov. 2, 2020), Dkt. 214).

None of this has gone unnoticed by the Government. Indeed, Amazon's pleadings and arguments reflect the company's close communications and ties with the Government's investigation. For example, Amazon made an emergency motion to unseal its original complaint solely for purposes of sharing it with the Government. *WDC Holdings LLC*, 1:20-cv-00484 at 6 (Apr. 27, 2020), Dkt. 10. This close relationship makes sense. Amazon and IPI brought the matter to the Government's attention. *See* Defs.' Opening Br. in Support of their Mot. to Dismiss the Compl., *W.D.C. Holdings, LLC v. IPI Partners, LLC*, No. 2020-1026-JTL, 2021 WL 530975 (Del. Ch. Ct. Feb. 5, 2021) ("IPI and Amazon . . . reported the allegations and supporting evidence to the DOJ.").

The press has also reported about Amazon's allegations in excruciating detail. *See, e.g.,* Levi Pulkkinen, *Former AWS real estate managers, accused of taking millions in kickbacks, challenge Amazon's motives amid FBI Investigation*, GeekWire (Feb. 17, 2021), https://bit.ly/3bd6B4V. This one article alone reports an astonishing level of detail beyond what the Government has included in its complaint. The motion to stay does not acknowledge any of that publicity.

## II.      ARGUMENT

18 U.S.C. § 981(g)(1) provides that "the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." At the same time, a stay is not automatic merely because the Government asserts some prospective or potential harm. Rather, the Court must analyze (1) whether the civil case is related to a criminal

investigation or criminal case and (2) whether the civil discovery <u>will</u> adversely affect the Government. *See United States v. $3,592.00 United States Currency*, Case No. 15-CV-6511-FPG, 2016 WL 5402703, at *1-2 (W.D.N.Y. Sept. 28, 2016).

The second prong of that analysis is critical. In order to obtain a stay of the civil forfeiture proceeding, the Government "must make an *actual showing* that civil discovery will adversely affect the investigation or prosecution of a related criminal case." *$160,280.00 in U.S. Currency*, 108 F. Supp. 3d at 326 (emphasis added). "The Government cannot discharge its burden by claiming that the discovery process could, theoretically, impair the criminal case" because then "a stay would be appropriate whenever requested by the Government in a civil-forfeiture action." *United States v. Real Prop. & Premises*, 657 F. Supp. 2d 1060, 1063 (D. Minn. 2009). In other words, "[t]here is no presumption that civil discovery, in itself, automatically creates an adverse [effect] on the government's related criminal proceeding." *Id.* (quoting *United States v. All Funds ($357,311.68) Contained in N. Trust Bank of Fla. Account No. 7240001868*, No. Civ. A. 3:04-1476, 2004 WL 1834589, at *2 (N.D. Tex. Aug. 10. 2004)). Rather, it is the Government's burden to "show that civil discovery *will* adversely affect the criminal case," not that it "*could* adversely affect the criminal case." *$3,592.00 United States Currency*, 2016 WL 5402703, at *1 (emphasis in original).

In addition, even when the Government carries that burden, the court should determine whether a blanket stay of all discovery is warranted, or whether it can tailor a narrower solution that will protect the rights of all parties. In fact, given the seriousness and impact of property seizure, courts should also pay some real attention to the protecting the interests of the claimant. "With respect to the impact of civil discovery . . . , the court may determine that a stay is

unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case." 18 U.S.C. § 981(g)(3).

Here, a thorough—or even a cursory—reading of the Government's motion reflects nothing more than generalized speculation about potential effects on the Government's investigative efforts. Here is all the Government offers:

- "Given the procedural posture of this case, as described in Agent Combs' declaration, this is an instance where allowing civil discovery to proceed would subject the ongoing criminal investigation to early and broader discovery than would be permitted in the criminal case, to the detriment of the criminal case." (Mot. at 7);

- "Producing discovery will divulge the identities of witnesses, opening them up to attempts at witness tampering made by the targets/subjects themselves without the knowledge of their attorneys." (Mot. at 8);

- "[T]he United States has obtained evidence during the investigation of at least one instance of an individual who successfully eliminated evidence by contacting a potential witness or subject." (Mot. at 8);

- "Having to divulge the identity of witnesses will also discourage those witnesses from continuing to provide information to the agents as the investigation continues." (Mot. at 8);

- "[D]iscovery will reveal the identities of subjects of the investigation who do not appear to know that they are subjects, which would significantly damage the government's criminal investigation." (Mot. at 9);

- "[P]roceeding with discovery would expose [the moving claimants] to discovery, to include written discovery and depositions . . . which would burden their Fifth Amendment right against self-incrimination." (Mot. at 9); and

- "[T]he government having to propound written discovery and conduct depositions of these claimant targets would necessarily expose the government's strategy for a criminal trial . . . ." (Mot. at 10).

None of that is enough, even collectively. When "[a]ll the government has offered in its application are possibilities and speculation," a stay is inappropriate, and that is especially true where the Government has not, because it cannot, point to any discovery that actually would adversely affect the criminal investigation. *$3,592.00 United States Currency*, 2016 WL 5402703, at *2.

## A.    The Government Has Not Demonstrated a Showing of Actual Harm Necessary to Grant a Stay of the Civil Forfeiture Action

As the above excerpts demonstrate, the Government spouts only generic harms about how civil discovery would adversely affect the criminal case because of the "procedural posture" of this case, Mot. at 7, and speculates that responding to or propounding discovery would potentially expose the Government's strategy in the criminal trial, Mot. at 10.  Such statements "do nothing more than speculate about how civil discovery will adversely affect [the] criminal investigation." *$4,480,466.16 in Funds*, Civil Action No. 3:17-CV-2989-D, 2018 WL 1964255 at *3 (N.D. Tex. Apr. 26, 2018) (quoting *All Funds ($357,311.68)*, 2004 WL 1834589, at *2).  Following the Government's reasoning, as the court in the Northern District of Texas noted, "*every* civil forfeiture case with a related criminal investigation [would be] entitled to a stay." *Id.*

At a minimum, the Government must identify specific discovery requests that would require disclosure of harmful information, or articulate a specific harm it will face if the forfeiture case moves forward.  *See id.* at *3-4.  It has not done so. Instead, the Government merely offers speculative assertions that are not "legitimate argument[s] about the prospective ability of any of the claimants to engage in discovery that could compromise its related criminal investigation." *Id.*

The Court's reasoning in *$4,480,466.16 in Funds* is instructive.   Rejecting the government's motion to stay, the court found the government could not meet its burden with generalized assertions that the expansive nature of civil discovery would divulge witnesses and subjects or would otherwise endanger the criminal investigation and confidential information. *Id.* at *4.  As was the case in *$4,480,466.16 in Funds*, the Government's motion does not even allege, much less advance any showing, that "civil discovery will compromise the identity of confidential informants or cooperating witnesses. Nor has [it] shown how the claimants might abuse the discovery process with overbroad discovery requests." *Id.*

13

It is stunning and extraordinary that the Government would attempt to remedy that deficiency with vague allegations about witness tampering and evidence destruction. Whatever it means that "the United States has obtained evidence . . . of at least one instance of an individual who successfully eliminated evidence by contacting a potential witness or subject," Mot. at 8, there is not a shred of evidence tying that conduct to the Nelsons. To the contrary, it has been almost a year since the FBI agents flew across the country during a pandemic to advise Mr. Nelson that he is the target of a grand jury investigation. In that time, the Government has never suggested that the Nelsons have tampered with any witnesses, destroyed any evidence, or interfered with the investigation in any way. The Court should not permit the Government to rely on such unsubstantiated, sensational accusations about one other witness to hold up the Nelsons' right to proceed with their civil forfeiture claim.

**B. Much of the Investigation the Government Seeks to Protect Is Already Public**

The Government's generic statement that discovery will reveal unknown witnesses or alert potential targets seems remarkably disingenuous given the public nature of the parallel, ongoing Amazon lawsuit. Indeed, much of the information that the Government claims it needs to protect is all over the filings on that docket. Indeed, the Government cannot identify how, in a case that it has been investigating for more than a year, and in which the same parties are engaging in civil discovery over the same transactions, document discovery by the Nelsons will discourage witnesses. Nor does the Government articulate how document production would suddenly alert other individuals who are not already aware they are subjects or targets.

Indeed, a simple chart illustrates the substantial overlap between the Amazon lawsuit and the Government's investigation and the extent to which Amazon has placed in the public record a substantial amount of information related to the matters the Government now seeks to protect:[3]

| Government Complaint | Actual Name of Individual or Entity | Identified by Actual Name in Amazon Complaint? | Description in Amazon Complaint |
|---|---|---|---|
| Person #7 | Rodney Atherton | Yes | Counsel for Mr. Nelson, Casey Kirschner, Allcore Development LLC, and Finbrit Holdings LLC |
| Person #4 | Will Camenson | Yes | Amazon seeks relief against Mr. Camenson via alter ego allegation against defendants White Peaks Capital LLC and NOVA WPC |
| Person #6 | Herb Glimcher | Yes | Owner of the Blueridge Group LLC |
| Casey Kirschner | Casey Kirschner | Yes | Defendant |
| Person #1 | Christian Kirschner | Yes | Trustee of defendant Villanova Trust |
| Person #5 | Johnny Lim | Yes | An individual who employed his company "to facilitate the transfer" of funds |

---

[3] In addition to these already-known individuals and entities that the Government did not cite by name in this action, the Government also mentions "Business #1," which is already publicly known to be MoloLamken LLC, the law firm retained by Mr. Nelson in April 2020. Similarly, it is already publicly known that other entities and individuals, like Allcore Development LLC, a Defendant in the Amazon lawsuit, is relevant to this case.

| Government Complaint | Actual Name of Individual or Entity | Identified by Actual Name in Amazon Complaint? | Description in Amazon Complaint |
|---|---|---|---|
| Person #3 | Kyle Ramstetter | Yes | Amazon seeks relief against Mr. Ramstetter via alter ego allegation against defendants White Peaks Capital LLC and NOVA WPC |
| Person #2 | Brian Watson | Yes | Defendant |
| "Bank account" maintained on behalf of Casey Kirschner and Carleton Nelson | 2010 Irrevocable Trust LLC | Yes | A "bank account" maintained for the benefit of Casey Kirschner and Carleton Nelson |
| Seller #1 | 41992 John Mosby Highway LLC | Yes | Seller of property to White Peaks Capital LLC and NOVA WPC |
| Company #1 | Amazon.com, Inc. | Yes | Plaintiff |
| Company #4 | Blueridge Group LLC | Yes | Seller of property to Amazon. |
| E2M Properties LLC | E2M Properties LLC | Yes | Entity used "to facilitate the transfer" of funds |
| "Third-party company" that participated in a real estate transaction | Finbrit Holdings LLC | Yes | Defendant |
| Company #3 | NOVA WPC LLC and White Peaks Capital LLC, collectively | Yes | Defendant |
| Villanova Trust | Villanova Trust | Yes | Defendant |

| Government Complaint | Actual Name of Individual or Entity | Identified by Actual Name in Amazon Complaint? | Description in Amazon Complaint |
|---|---|---|---|
| Company #2 | WDC Holdings LLC dba Northstar Commercial Partners ("Northstar") | Yes | Defendant |
| Business #1 | MoloLamken LLC | Yes | Law firm retained by Mr. Nelson in April 2020 |

The Nelsons do not take the Government to task for obscuring so many names of individuals and entities that are involved in some way in the investigation. The Department of Justice Manual strongly urges that practice when the Government itself has named them in charging documents or other filings. At the same time, the Government is not permitted to hide behind those cryptic designations to justify its mission of denying the Nelsons the discovery to which they are entitled. Nor should the Court countenance the Government's effort to completely ignore the significance of the existing public record. As just one media report (of many) makes clear, the nature, extent, scope, and breadth of the Government's investigation has been highly publicized. *See* Pulkkinen, *supra*.

In other words, witnesses, targets, subjects, and the public are all well aware of the Government's investigation, and there has been ample evidence that the Government and Amazon are acting in concert. This case is like *United States v. Contents of Accounts*, Civil Action No. 3:10-CV-228-H, 2010 WL 2682397 (W.D. Ky. July 2, 2010), in which the court issued a protective order instead of a blanket stay in light of the information already disclosed and the way in which the government had pursued the case. Indeed, all of the cases the Government cites seem to have involved criminal investigations in which the government had taken much more substantial steps

to guard the secrecy of its efforts, none of which were compromised by the activity of an individual or entity alleged to be the victim. But here, just as in *Contents of Accounts*, "the government has already lost the element of surprise by pursuing the case the way it has." *Id.* at *2. And here, as there, a blanket stay would be inequitable because "the government seeks to stop the train it set in motion," now that the civil suit is "inconvenient." *See id.* In truth, properly managed civil discovery in this forfeiture case will do no harm to the Government or to its investigation.

### C.     The Fifth Amendment Claims Are Not Grounds for a Stay

The Government also cannot hide behind a Fifth Amendment argument that it has effectively manufactured by electing to file a single complaint against funds that belong to three different sets of claimants: the Nelsons, Casey Kirschner, and EM2. The Nelsons are not asserting a claim to property owned by either Mr. Kirschner or EM2. Nor do the Nelsons currently seek to depose either Mr. Kirschner or the principal of EM2. Therefore, there is no pending threat to the Fifth Amendment rights of those witnesses, even if they are targets of the Government's investigation. A reasonable discovery plan can fully address the Government's concern, in the event that either side needs the testimony of either of the other claimants.

Notably, none of the cases the Government cites relieve it of its burden to articulate the actual harm civil discovery poses to the pending, active investigation. To the contrary, in *$160,280.00 in U.S. Currency*, the court was "satisfied that discovery . . . would adversely affect the State's prosecution" because of the scope of the claimant's *current and likely* discovery requests on a pending indictment. 108 F. Supp. 3d. at 326-27. And even then, the court implemented only a short stay to ease the burden on the parties. *Id*.

Simply put, "to grant a stay on this record, without any specific showing and when no lesser alternatives (such as a protective order, or preliminarily limiting discovery to certain areas

or types) have even been attempted, . . . would be inconsistent with the standard articulated by the statute." *$3,592.00 United States Currency*, 2016 WL 5402703, at *2.

### D.     Granting the Government's Six-Month Stay Would Unduly Prejudice Mr. and Mr. Nelson

The Government has been investigating this case for over a year.  Despite numerous requests, it has recently informed counsel that it has not even created an image of or begun to search the laptop it seized from Mr. Nelson on June 2, 2020—eight and a half months ago.  As the Government's motion makes clear, grand juries are not currently sitting due to the ongoing pandemic.  It remains unclear how much longer the Government's investigation will take, or even if that investigation will result in charges.

In the meantime, the Government has held $633,916.28 of the Nelsons' money for almost nine months.  Based on the Government's own representations, $475,892 of that money are not even purported fraud proceeds, but were seized because of potential commingling with money that the Nelsons earned from their jobs or investments.  While that theory is permissible under some circumstances, *see* 18 U.S.C. § 981 (providing for civil forfeiture of property *involved in or traceable to* qualifying offenses); *cf. Luis v. United States*, 136 S.Ct. 1083 (2016) (holding that pretrial restraint of a defendant's legitimate, untainted assets that would be used to secure counsel is unconstitutional), [4] seizure of funds under those circumstances substantially exacerbates the harm to the owner and often becomes unnecessarily punitive.

Indeed, the seizure of these funds has had a profound effect on the Nelsons.  They intended to use $125,000 to satisfy their 2019 income tax obligations.  (The Government seized the money in June; because of the pandemic, the Nelsons had not yet filed their return, which was prepared

but not due until July 15, 2020.)  They are now unable to make that payment.  They also intended

to use much of the money for their counsel fees before the Government seized that money with no

notice to or discussion with the Nelsons' attorneys.  Although the Government was forced to return

some of that money, the substantial balance is unavailable for that purpose either.  And, of course,

the extensive publicity regarding the proceedings involving Amazon and this forfeiture complaint

has compromised the ability of both Mr. and Mrs. Nelson to earn a living and care for their large,

young family.[5]

The Government's forfeiture action has been particularly detrimental to Mrs. Nelson who

the Government has not identified as either a target or a subject of the investigation.  The

Government could have tried to seek a continuance from its statutory obligation to file the civil

forfeiture complaint.  Here, it chose not to do so despite the incredibly harmful effect its naming

of Amy Nelson in the caption of the complaint would have on her business and reputation.  Having

made that choice, without consulting with the Nelsons' attorneys or Mr. Nelson, the relief the

Government seeks would give Mrs. Nelson no avenue to obtain even a scintilla of information to

which she is entitled to under the discovery rules.[6]  The unfairness of that is apparent.

### E.  Any Remaining Government Interests Can Be Preserved Through a Protective Order and Phased Discovery

---

[5] Based on Amazon's complaints and pleadings, the Nelsons have reason to believe the seizure warrants are based on misleading information and do not establish probable cause.  For example, and as discussed *supra*, the Government seized Mr. Nelson's money without reviewing the terms of his employment contract with Amazon to even understand if Amazon permitted Mr. Nelson to receive money related to business endeavors with "clients and customers" of Amazon—and Mr. Nelson's employment contract includes this *exact* language.  (*WDC Holdings LLC*, 1:20-cv-00484 (Sept. 19, 2020), Dkt. 162-10).  Granting a stay instead of limited discovery potentially allows the Government to continue to hold money whose seizure may well have been unlawful.

[6] If the Government was so concerned about the need for secrecy it could have sought permission of the Court to delay filing the complaint entirely.  Instead it chose not to do so. 18 U.S.C. § 983(3)(A) (permitting government to extend period for filing a complaint for good cause).

This Court does not currently have the power to rectify that situation. The Nelsons understand that their ultimate right to retrieve their property must wait. But the Court does not have to compound the injustice by preventing discovery from proceeding at all.

Rather, if this Court determines that the Government still has some interests that must be protected, the Court should allow phased and limited discovery in lieu of a stay. Indeed, the Court should direct the Nelsons and the Government to meet and confer, develop a discovery plan, and proceed.

The Government's motion does not even entertain the possibility that phased discovery might be appropriate, much less why such an approach would be insufficient to protect its asserted interests. At a minimum, the Court should examine carefully the Government's affidavit and require the Government to articulate what specific risks such a measured approach would pose for its investigation.

In doing so, it cannot continue to rely on vague assertions or ignore the very public nature of its investigation already. The Nelsons are ready and willing to work with the Court and the Government to craft a protective order or a phased discovery plan that adequately protects any of the Government's well-articulated interests while preserving the Nelsons' ability and right to pursue the civil case. *See United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 214 (D.D.C. 2014) (finding that "a well-crafted protective order limiting discovery could 'protect the interest' of the government while preserving the ability of the claimants to pursue the civil case" and ordering the government to consult with claimants to propose a protective order within 30 days).

## CONCLUSION

"To file actions and then routinely obtain stays of those actions congests the court system and prevents it from expeditiously and effectively dispensing justice." *United States v. One Parcel of Real Estate at 1303 Whitehead St., Key W., Fla.*, 729 F. Supp. 98, 100 (S.D. Fla. 1990). That

assessment has rarely been more true than in this civil forfeiture action against the Nelsons' property. The Government chose to seize the Nelsons' money after Mr. Nelson's counsel had made a presentation to the Government. It chose to seize funds he set aside and wired to his criminal defense attorneys. It sat on its hands for almost a year while Amazon publicized every aspect of the alleged scheme and the investigation that it had convinced the Government to conduct. The Government took all of those actions during a pandemic when grand juries are sitting irregularly at best.

Now, when ordinary fairness would require the production of some discovery related to the allegations, the Government seeks a stay based on vague, conclusory, and rote recitations of potential harm. But the Government does not articulate reasons why such broad relief is necessary or why phased discovery will not suffice. Granting the relief the Government requests is not consistent with the goals of the forfeiture statute, the case law, or basic fairness.

The Nelsons respectfully request that this Court deny the Government's motion to stay the civil forfeiture proceeding against their property. However, they remain ready and willing to work with the Court and the Government to craft a protective order that protects the parties' respective interests.

February 17, 2021                                        Respectfully submitted,

                                                         /s/ Preston Smith
                                                         Preston Smith (VA Bar No. 86908)
                                                         Suneeta Hazra (*pro hac vice*)
                                                         Paul J. Fishman (*pro hac vice*)
                                                         ARNOLD & PORTER KAYE SCHOLER LLP
                                                         601 Massachusetts Ave., N.W.
                                                         Washington, D.C. 20001-3743
                                                         Telephone: +1 202.942.5000
                                                         Facsimile: +1 202.942.5999
                                                         E-mail: preston.smith@arnoldporter.com

E-mail:  suneeta.hazra@arnoldporter.com
E-mail:  paul.fishman@arnoldporter.com

*Counsel for Claimants*

## CERTIFICATE OF SERVICE

I certify that, on February 17, 2021, I electronically filed the Response in Opposition to Motion For a Stay via ECF, which caused a copy of the Response in Opposition to Motion For a Stay to be served on all counsel of record. I have also mailed a true and correct copy of this response to the following:

Casey Kirschner
635 Alvarado Lane North
Plymouth, MN 55447

/s/ Preston Smith
Preston Smith (VA Bar No. 86908)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-6544
Email: preston.smith@arnoldporter.com

*Counsel for Claimants*