# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-1343 |
| $4,543.79 IN FUNDS SEIZED FROM BANK ACCOUNT #153568031006 IN THE NAME OF CARLETON P. NELSON AND AMY S. NELSON AT U.S. BANK, | |
| $8,388.54 IN FUNDS SEIZED FROM BANK ACCOUNT #1635892407 IN THE NAME OF AMY STERNER NELSON AT WELLS FARGO, | |
| $13,559.97 IN FUNDS SEIZED FROM BANK ACCOUNT #1361410762 IN THE NAME OF E2M PROPERTIES LLC AT CAPITAL ONE BANK, | |
| $25,343.01 IN FUNDS SEIZED FROM BANK ACCOUNT #145947373 IN THE NAME OF CARLETON NELSON AT CITIBANK, | |
| $98,358.92 IN FUNDS SEIZED FROM BANK ACCOUNT #149656681 IN THE NAME OF CARLETON NELSON AT CITIBANK, | |
| $491,780.50 IN FUNDS SEIZED FROM ACCOUNT ENDING 5810, HELD ON BEHALF OF AMY STERNER NELSON AND CARLETON P. NELSON, AT SIGNATURE BANK, | |
| $10,567.43 IN FUNDS SEIZED FROM BANK ACCOUNT #104781237441 IN THE NAME OF DEVON P. KIRSCHNER AND CASEY H. KIRSCHNER AT U.S. BANK, | |

$1,217.05 IN FUNDS SEIZED FROM BANK ACCOUNT #320013539278 IN THE NAME OF AMY S. NELSON AND CARLETON PHILLIP NELSON AT AMERICAN EXPRESS NATIONAL BANK,

and

$4,284.47 IN FUNDS SEIZED FROM BANK ACCOUNT #1518835838 IN THE NAME OF AMY S. NELSON AND CARLETON PHILLIP NELSON AT AMERICAN EXPRESS NATIONAL BANK,

                              Defendants In Rem.

## RESPONSE OF AMY NELSON AND CARLETON NELSON IN OPPOSITION TO SECOND MOTION FOR A STAY

Come now the Claimants, Amy Nelson and Carleton Nelson, both through counsel, and hereby oppose the Government's motion for a second stay of this civil forfeiture action.

After telling this Court in March that "six months will do it," for purposes of its need for its first stay of discovery sought nine months after it seized the funds at issue,[1] the Government is back again, seeking another "six-month extension of the stay" of proceedings in this case. (Doc. 46: Second Mot. at 8.) In the meantime, the Government continues to deprive the Nelsons of more than $600,000—essentially their entire life savings, derived from perfectly legal sources—based on a forfeiture Complaint that is rife with false information that the Nelsons have no forum to dispute as long as this matter remains stayed. The harm from the delay so far is not speculative; over the nearly 500 days since the government seized the funds, the Nelsons have suffered significant financial hardship and professional consequences, as detailed below. And, if the Court permits the Government to continue to delay these proceedings, the harm will grow, likely forcing

---

[1]     Doc. 35: Transcript of Proceedings on March 5, 2021 at 20.

2

the Nelsons into bankruptcy and leaving them unable to hire counsel of their choice. The Court should not permit the Government to continue to deprive the Nelsons of their property for nearly *two years* without an opportunity to challenge that deprivation.

## BACKGROUND

Consistent with the Government's motion, the Nelsons do not intend to repeat the facts, law, and arguments previously presented in their opposition to the first stay. They respectfully request that the Court permit them to incorporate those arguments here by reference.

At the same time, however, the Nelsons wish to update the Court about the hardships this stay has placed on them, consistent with its invitation at the last hearing. To that end, the following hardships have resulted from the Government's seizure of their money and the accusations the Government has made in the course of doing so, none of which the Nelsons can dispute so long as the stay persists:

1. The Nelsons were forced to sell their home in Seattle and move in with Ms. Nelson's parents in Ohio, as they could not afford the mortgage payments and needed the equity to pay everyday living expenses and attorneys fees;

2. The Nelsons were forced to sell their car for the same reasons;

3. Mr. Nelson was forced to liquidate his 401(k) for the same reasons;

4. The Nelsons were forced to terminate prior counsel and hire new counsel out of concerns about the cost of representation;

5. Ms. Nelson was forced to step down as the chief executive officer of a company she founded in Seattle which had over 75 employees at the time the funds were seized, in exchange for a position with a higher salary that could pay for her family's living expenses;

6. The company that Mr. Nelson had been working with, Allcore, ceased operations due to the Government's seizure of all of the company's assets;

7. Mr. Nelson has lost consulting contracts based on the allegations in the Government's forfeiture Complaint, which he cannot contest while the stay persists;

8. When the Nelsons attempted to rent a home in Ohio, the landlord refused to extend them the same terms as any other renter (because he had read the forfeiture Complaint) and demanded payment of a full year's rent in advance;

9. The Nelsons withdrew their two older children from private school, as they could not afford the tuition, and were unable to pay for childcare for their younger two children for several months, forcing the Nelsons to rely on family and friends to watch them as they seek to earn a living; and

10. The Nelsons were unable to pay their federal income taxes for 2019, for which they had funds set aside before the seizure that were taken by the Government.

If the Government is again permitted to extend the stay of these proceedings and deprive the Nelsons of their money for another six months, the harm will increase. Specifically, the Nelsons may not be able to afford counsel at all—quite the perverse result of the Government's seizure of money placed in trust to pay for attorneys—and they are likely to be forced into bankruptcy. All of this because the Government will have been able to hold their funds for two years without having to disclose documents supporting its factual basis for doing so.

Although mentioned in the Nelsons' prior opposition, it is important to emphasize that the funds at issue in this forfeiture Complaint include (1) Ms. Nelson's salary and other earnings from her job; (2) wages that Mr. Nelson earned from his employment at Amazon; (3) proceeds from Mr. Nelson's sale of certain Amazon stock options that were a substantial portion of his

compensation during his seven-year tenure at the company; (4) $125,000 set aside to pay the Nelsons' 2019 federal income taxes; and (5) consulting fees that Mr. Nelson earned after he left Amazon in June 2019. Without discovery or further proceedings, the Nelsons have no opportunity to demonstrate to the Court the untainted nature of these funds.

## ARGUMENT

The Government has held $633,916.28 of the Nelsons' money for nearly 18 months. If this stay is granted, it will be almost two years. Based on the Government's own representations, $475,892 of that money are not even purported fraud proceeds but were seized because of potential commingling with money earned by the Nelsons. *See* 18 U.S.C. § 981 (providing for civil forfeiture of property *involved in or traceable to* qualifying offenses); *cf. Luis v. United States*, 136 S.Ct. 1083 (2016) (holding that pretrial restraint of a defendant's legitimate, untainted assets that would be used to secure counsel is unconstitutional). Its argument for taking those funds and then asking this Court to stop any litigation about the propriety of its actions is the assertion that discovery will harm an ongoing investigation. It said that six months ago, it says that now, and it says that will be the case six months from now. None of this accords with due process.

If another stay is granted, the delay will raise significant constitutional issues. In a discussion about constitutional due process in the context of criminal proceedings and civil forfeiture, the Supreme Court observed that delay in the former is quite distinct from delay in the latter: "A suspect who has not been indicted retains his liberty; a claimant whose property has been seized, however, has been entirely deprived of the use of the property." *United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 563-64 (1983). In that same case, the Court regarded an 18-month delay as "quite significant," describing the deprivation of even eight thousand dollars for that period of time as "undoubtedly a significant burden." *Id.* at 565. If the Court grants this additional

request for a stay, the Nelsons will bear that "significant burden" for significantly *more* than 18 months. And they will have done so without being provided any opportunity to investigate or dispute the Government's claims.

Nor do any of the Government's explanations for its new request relate to harm. In its motion, the Government blames its failure to take other actions in the last six months on "an impasse . . . related to privilege," which it claims delayed its investigators' access to signficiant amounts of evidence. (Doc. 45 at 3.) It says that it now will be able to "sort through" evidence "obtained from search warrants." (*Id.* at 4.) And, although the Government does not say so clearly, the implication is clear: The evidence at issue is documents that that Government seized pursuant to search warrants in 2020, and has in its possession, but could not review due to the presence of privileged information. Now that the privilege issues are resolved, it can review these documents. And that all may be true. But it provides this Court with no basis to conclude that the Government will be harmed by starting the discovery process in this case now. On the contrary, the documents at issue are documents *in the Government's possession.* Those documents cannot be deleted, destroyed, or hidden. They say what they say. And counsel for the target has already seen them.

The Government's only other new attempt at suggesting harm is the statement that, in May 2021, "a target also contacted a witness in the case." (Doc. 45 at 5.) The Government does not claim that this contact was obstructive, nor does it claim that any evidence was lost as a result. And it should not be surprising that individuals who have worked together in the past or who know each other might speak to one another or see each other at events as an investigation drags on for nearly two years. But, even if a target spoke to a witness, nothing about that suggests that the Nelsons should not be provided discovery about the basis for the Government's seizure of their money two years after the money was taken.

To be sure, the Court does not currently have the power to rectify that situation immediately. As before, the Nelsons understand that their ultimate right to retrieve their property must wait until it can be adjudicated. But the Court does not have to compound the "significant burden" they face by preventing discovery from proceeding at all. In the absence of a tangible showing of harm by the Government, the Court should enter a protective order and permit at least some forms of discovery.

## CONCLUSION

The Government chose to seize the Nelsons' money after Mr. Nelson had come in and proffered to the Government. It chose to seize funds he set aside for his criminal defense attorneys. It then chose to publicly file its complaint naming both Nelsons and alleging fraudulent conduct. Then, before it could be forced to produce some documentary evidence related to its allegations, it sought and received a stay, assuring the Court that it only needed a six-month delay. Now, it says it needs six more, without explaining why it would harm the investigation if the Nelsons received discovery during that time. The forfeiture statute, the case law, and basic fairness weigh against this request. The Court should deny it.

Dated:    September 15, 2021            Respectfully submitted,

/s/ Rachel Friedman
Rachel Friedman (VA Bar #93898)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rfriedma@burr.com

and

        J. Alex Little, IV (TN BPR #29858)
        (*pro hac vice*)
        BURR & FORMAN, LLP
        222 2nd Ave. S., Suite 2000
        Nashville, TN 37201
        Telephone: (615) 724-3200
        Facsimile: (615) 724-3290
        alex.little@burr.com

        *Counsel for Claimants*

## CERTIFICATE OF SERVICE

I certify that, on September 15, 2021, I electronically filed the Response in Opposition to Motion to Stay via ECF, which caused a copy of the foregoing pleading to be served on all counsel of record. I have also mailed a true and correct copy of this response to the following:

Casey Kirschner
635 Alvarado Lane North
Plymouth, MN 55447

        /s/ Rachel Friedman
        Rachel Friedman (VA Bar #93898)
        BURR & FORMAN LLP
        420 North 20th Street, Suite 3400
        Birmingham, AL  35203
        Telephone: (205) 251-3000
        Facsimile: (205) 458-5100
        rfriedma@burr.com

        *Counsel for Claimants*