IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil No.  1:20-cv-1343 |
| $4,543.79 IN FUNDS SEIZED FROM BANK ACCOUNT #153568031006 IN THE NAME OF CARLETON P. NELSON AND AMY S. NELSON AT U.S. BANK, | |
| $8,388.54 IN FUNDS SEIZED FROM BANK ACCOUNT #1635892407 IN THE NAME OF AMY STERNER NELSON AT WELLS FARGO, | |
| $13,559.97 IN FUNDS SEIZED FROM BANK ACCOUNT #1361410762 IN THE NAME OF E2M PROPERTIES LLC AT CAPTIAL ONE BANK, | |
| $25,343.01 IN FUNDS SEIZED FROM BANK ACCOUNT #145947373 IN THE NAME OF CARLETON NELSON AT CITIBANK, | |
| $98,358.92 IN FUNDS SEIZED FROM BANK ACCOUNT #149656681 IN THE NAME OF CARLETON NELSON AT CITIBANK, | |
| $491,780.50 IN FUNDS SEIZED FROM ACCOUNT ENDING IN 5810, HELD ON BEHALF OF AMY STERNER NELSON AND CARLETON P. NELSON, AT SIGNATURE BANK, | |
| $10,567.43 IN FUNDS SEIZED FROM BANK ACCOUNT # 104781237441 IN THE NAME OF DEVON M. KIRSCHNER AND CASEY H. KIRSCHNER AT U.S. BANK, | |

$1,217.05 IN FUNDS SEIZED FROM BANK
ACCOUNT #320013539278 IN THE NAME
OF AMY S. NELSON AND CARLETON
PHILLIP NELSON AT AMERICAN
EXPRESS NATIONAL BANK,

and

$4,284.47 IN FUNDS SEIZED FROM BANK
ACCOUNT #1518835838 IN THE NAME
OF AMY S. NELSON AND CARLETON
PHILLIP NELSON AT AMERICAN
EXPRESS NATIONAL BANK,

Defendants In Rem.

## REPLY TO CLAIMANT'S RESPONSE IN OPPOSITION TO THE RENEWAL OF THE STAY

Comes now the United States of America, by counsel, and offers its reply to the response of claimants Carleton and Amy Nelson (Document 49). The United States has brought this civil forfeiture action with the objective of ensuring that a large sum of apparently stolen and laundered money does not disappear. Indeed, a Court has already found probable cause that the defendant property constitutes fraud proceeds and property involved in laundering. The government filed this forfeiture action in the hope of maintaining the *status quo* until the government can conclude its criminal investigation. The government's present request for a continuation of the stay is necessary to ensure that it may press forward without interference, to seek to complete its criminal investigation, and to seek to determine the appropriate disposition of the funds at issue. The government has sought to solve the puzzle of this case as quietly and as quickly as it could. But the Nelsons' own actions have the effect of making secrecy and speed impossible, thus necessitating this request for a continuation of the stay.

I.      **<u>The Nelsons' Request to Dissolve the Stay Would Undermine the Secrecy That Is Essential to A Grand Jury Investigation.</u>**

The Nelsons ask the Court to permit broad civil discovery into the government's ongoing investigation, despite the fact that the government has yet to publicly charge anyone.  But it has been the well-settled rule for centuries that grand jury proceedings have proceeded in secret. <u>Douglas Oil v. Petrol Stops Northwest</u>, 441 U.S. 211, 218 (1979); <u>Pittsburgh Plate Glass Co. v. United States</u>, 360 U.S. 395, 399 (1959).  Experience bears out the wisdom of this practice. First, secrecy during the investigative stage protects the innocent.  <u>See, e.g.</u>, <u>Douglas Oil</u>, 441 U.S. at 219; <u>In re American Historical Ass'n</u>, 62 F.Supp.2d 1100, 1103 (S.D.N.Y. 1999).

Second, secrecy during the investigative stage gives society the best possible chance of catching those who are in fact guilty and of holding wrongdoers to account for their crimes. Secrecy gives investigators the best chance of finding witnesses who are willing to speak openly, the best chance of seeing the facts clearly, and possibly the *only* chance of gathering evidence before it is destroyed, disappears, or is altered.  <u>See</u> <u>Douglas Oil</u>, 441 U.S. at 219; <u>Rehberg v. Paulk</u>, 566 U.S. 356, 374 (2012).  An investigation conducted in secret is far and away the best method for preventing would-be liars from lying, for spotting fake or manufactured defenses when proffered, and for proving that a lie is in fact a lie.  That is because when an investigation is conducted in secret, it is far more difficult for a criminal to manufacture or maintain plausible but false defenses, or to destroy the evidence that would reveal his lie.  By comparison, a guilty suspect, holding all of the government's evidence, is in the best position to fabricate a false defense, to conspire with his friends to do the same, or to ensure that he has left no trace of his corruption.

Moreover, the need for secrecy is greatest when, as in this case, an investigation is complex and multifaceted.  The more complicated the investigation, the longer it takes to sift

through and understand the evidence, and the more difficult it becomes to separate that which is merely suspicious from that which is truly criminal.  The more complicated the puzzle, the more opportunities there are for a guilty criminal—knowing the pieces ahead of time—to try to destroy the pieces or, worse yet, to replace them with fake ones.  Dissolving the stay now would undermine the secrecy that is so critical to the grand jury's work.

## II.    Claimants Have Created the Very Delay of Which They Complain.

Second, the claimants have created the delay of which they now complain.  One of the key lines of inquiry in the government's ongoing investigation centers upon gigabytes of electronic data that might plausibly include some privileged materials.  That population of data currently is in the possession of a filter team, but has not been turned over to the prosecutors assigned to the criminal investigation.  In April 2021, the filter team provided a copy of that data to claimant's counsel so that he could review the materials, identify anything that he deems to be privileged, and draft a privilege log for review by the government's filter attorney.  The intent of this approach was to give claimant's counsel and the filter attorney an opportunity to flag and screen out any materials where they both agreed that a valid privilege applied, and to seek to narrow the areas of dispute wherever possible.

To date, however, claimant's counsel has not provided the assigned filter attorney with a privilege log for the electronic data.[1]  And as a result of that delay, the prosecutors assigned to the criminal investigation and the undersigned forfeiture AUSA have yet to be given access to the electronic information that defense counsel is reviewing.[2]

---

[1] Claimants' counsel has given the assigned filter attorney a privilege log that addresses only a much smaller set of hard-copy materials consisting of approximately ten percent of the materials at issue.

[2] The claimants cite the undersigned's comments at the March 5, 2021 hearing that a six-month stay would be sufficient.  The government made that estimation at that time based on its belief

Aside from the other issues already mentioned in the government's motion with proceeding with civil (or even criminal) discovery now, the fact that there is such voluminous discovery that the investigative team has not been given, much less sorted through, would make complete discovery production impossible at this point.  This would be in addition to the other problems with moving forward on discovery now, including informer's privilege, law enforcement privilege, divulging of witness lists, and sidetracking the investigative team away from the criminal case to tend to more extensive civil discovery than is possible in the criminal case—all to the detriment of the criminal case.  As Special Agent Combs's declarations have made clear, divulging witness names in this ongoing investigation would indeed negatively impact the criminal investigation.

The claimants repeat a claim they made in their previous response in opposition to the first stay in this case—that $475,892 of the funds at issue is "not even purported fraud proceeds . . . [b]ased on the Government's own representations" (Document 49, p. 3).  See also Document 28, p. 20.  The government has repeatedly told the Nelsons, through prior counsel, that of the $635,084.31 seized from them, FBI's financial analysis shows that ninety-four percent of those funds ($595,636.87) are directly traceable fraud proceeds.  The other six percent ($39,447.44) was seized as part of the corpus of funds involved in violations of 18 U.S.C. §§ 1956(h), 1956(a)(1)(B)(i), and 1957.  See United States v. Kivanc, 714 F.3d 782, 794 (4th Cir. 2013) ("when legitimate funds are commingled with property involved in money laundering . . . the entire property, including the legitimate funds, is subject to forfeiture").

---

that it would be able to press forward with its investigation without the delays occasioned by claimants' counsel.  That has not come to pass.

Finally, granting the government's request to continue the stay would serve the interests of judicial economy.  At present, there are four civil forfeiture cases pending that are all closely related to the single criminal investigation the government references here.  After the criminal investigation is through proceeding in its usual course, if the government determines that the apparently stolen and laundered money is in fact stolen and laundered, and a grand jury returns a true bill, then the disposition of any tainted money will be resolved through the criminal process.  If, on the other hand, the government ultimately were to determine that no crime has been committed, then no civil proceedings will be necessary, as the government will ensure that the money is returned.  Demanding that civil discovery proceed immediately in this action will therefore inevitably involve a significant waste of the Court's resources.

The claimants cite United States v. $8,850 in U.S. Currency, 461 U.S. 555 (1983) for the proposition that granting an additional stay would violate due process, but this garbles the facts of $8,850 in U.S. Currency and obfuscates the law on due process as it relates to stays.  The $8,850 in U.S. Currency case involved a warrantless seizure of cash based on a currency reporting violation under Title 31.  The cash in that case was seized in September 1975, whereupon Customs sent the claimant in that case a letter informing the claimant that the cash was subject to forfeiture, but the claimant could petition for remission or mitigation.[3]  The claimant was criminally charged for making false statements in June 1976, but even that proceeding did not give the claimant an outlet even to make a claim to the cash that had been

---

[3] To be clear, at this stage this was not a forfeiture proceeding.  The claimant was being invited to petition the Customs Service for remission or mitigation—the forfeiture equivalent of clemency or commutation—not for any proceeding to determine whether the funds were, in fact, illicit proceeds.  This seizure in $8,850 in U.S. Currency long pre-dated the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and the administrative forfeiture procedures in place nowadays.

seized from her in September 1975.  It was not until March 1977 that the government filed a civil

forfeiture suit to affect the forfeiture of the cash seized from the claimant in $8,850 in U.S.

Currency.  Though the Supreme Court conceded that the 18 month delay "was a substantial

period of time," the delay at issue was "the Government's delay *in instituting* civil forfeiture

proceedings," in other words, filing the civil forfeiture suit.  Id. at 569 (emphasis added).  The

Supreme Court ultimately found that, among other factors, the government had not been dilatory,

and thus the 18 month delay in $8,850 in U.S. Currency was not unreasonable.  Id.

When it comes to stays, as opposed to initial filing of civil forfeiture proceedings, some

Courts have expressed doubt that $8,850 in U.S. Currency and the Barker v. Wingo, 407 U.S.

514 (1972) (setting forth criminal speedy trial factors: (1) length of delay; (2) reasons for the

delay; (3) timing of claimant's assertion of rights; and (4) prejudice to claimant) analysis that

underpinned it even apply to stays of civil forfeiture cases already filed.  See, e.g., United States

v. $1,111,120.00 in U.S. Currency, No. 3:10-cv-317, 2014 WL 619436, at *2 (S.D.Ohio Feb. 18,

2014) (three-year stay of civil case did not violate due process; Barker v. Wingo applies only to

delays in the initiation of proceedings, not to stays).  Even for Courts that do analyze stays under

$8,850 and Wingo, those Courts conclude that even a lengthy delay caused by granting a stay

does not violate due process if the reason for the stay is to avoid interfering with a parallel

criminal case.  United States v. $307,970 in U.S. Currency, 156 F.Supp.3d 708, 720 (E.D.N.C.

2016) (four year delay caused in part by stays to avoid interference with a criminal investigation

and in part by claimant's own tactics did not violate due process); United States v. 6415 North

Harrison Avenue, No. 1:11-cv-304, 2012 WL 4364076, at *5 (E.D.Cal. Sept. 21, 2012) (even

years of potential delays would not violate due process because "the presence of related criminal

proceedings has long been considered a justification for a lengthy delay in forfeiture

proceedings" and noting that the delay was not "the result of any dilatory conduct by the United States").  It should be noted that "[o]ne [Wingo] factor by itself does not create a sufficient condition for finding unreasonable delay."  6415 North Harrison Avenue, 2012 WL 4364076, at *5 (quoting $8,850 in U.S. Currency) (internal quotation marks omitted).

      In this case, as explained above, the government has sought stays in definite time period intervals, rather than open-ended ones.  This was after the government seized the defendant property upon a finding of probable cause with a seizure warrant, timely initiated administrative forfeiture, and timely initiated judicial forfeiture once the claimants gave FBI notice that the administrative forfeiture would be contested.  See generally 18 U.S.C. § 983(a) (setting forth deadlines for administrative forfeiture and, upon receipt of an administrative claim, judicial forfeiture).  Although it is true that back in March 2021 the government did not think it would have to seek a six month renewal of this stay, that is because the government did not foresee the scenario that played out—where the claimants would fail for months to provide the filter attorney with a privilege log for the overwhelming majority of data at issue.  The claimants should not be permitted to use their own claims of privilege as both a shield and a sword.

      Importantly, in this case "the delay is not the result of any dilatory conduct by the United States."  6415 North Harrison Avenue, 2012 WL 4364076, at *5.

      Finally, as to the criminal case, the Supreme Court:

> …consistently ha[s] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.  If preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony.  Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution.

<u>Paulk</u>, 566 U.S. at 374.  Indeed, the Supreme Court characterizes grand jury secrecy as "a long-established policy ... older than our Nation itself."  <u>Pittsburgh Plate Glass Co.</u>, 360 U.S. at 399. These concerns become no less salient here, as the criminal case proceeds in its due course, simply because the government (quite properly) used a filter team.

For the reasons discussed herein, as well as those advanced in the government and E2M's motion to renew the stay, the government respectfully urges the Court to renew the six month stay.

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

By:      /s/ Kevin Hudson
Kevin Hudson
Assistant United States Attorney
Attorney for the United States
721 Lakefront Commons, Suite 300
Newport News, VA 23606
Office Number: (757) 591-4000
Facsimile Number: (757) 591-0866
Email Address:  kevin.hudson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of September 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of the filing (NEF) to all counsel of record.  I have also mailed a true copy of this motion to the following:

Casey Kirschner
635 Alvarado Lane North
Plymouth, MN 55447

By:    __/s/ Kevin Hudson_____
Kevin Hudson
Assistant United States Attorney
Virginia State Bar No. 81420
Attorney for the United States
721 Lakefront Commons, Suite 300
Newport News, VA 23606
Office Number: (757) 591-4000
Facsimile Number: (757) 591-0866
Email Address:  kevin.hudson@usdoj.gov