IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:20-cv-1343 |
| ) | |
| v. ) | |
| ) | |
| $4,543.79 IN FUNDS SEIZED FROM BANK) | |
| ACCOUNT #153568031006 IN THE NAME) | |
| OF CARLETON P. NELSON AND AMY S.) | |
| NELSON AT U.S. BANK, et al.,         ) | |
| ) | |
| Defendants In Rem.         ) | |

## **THE NELSONS' BRIEF IN SUPPORT OF UNSEALING DOCUMENTS**

Carleton Nelson and Amy Nelson (the "Nelsons") file this brief in response to the Court's April 4, 2024 Order stating they request the four documents at issue be unsealed. And undersigned counsel represents that he has confirmed the other two claimants, Casey Kirschner and E2M Properties, LLC, do not oppose unsealing the four documents.

## **INTRODUCTION**

In connection with these civil forfeiture proceedings, the Government sought a stay under 18 U.S.C. § 981(g)(1) because of an ongoing criminal investigation. Dkt. 19. In connection with seeking that stay, as permitted under 18 U.S.C. § 918(g)(5), the Government sought to seal the declaration (and future documents) it filed in support of obtaining and continuing that stay. Dkt. 20, 40, 47, 50. Section 918(g)(5) allows for ex parte filings under sealing "when disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial." The Court granted the requests to seal the filings under Section 981(g)(5). Now, the Government has dismissed the plea agreements of two of the cooperators and in those dismissals acknowledged

1

that it has declined to bring charges against the other individuals it was investigating—in short, there is no longer an ongoing investigation, and there is no pending criminal trial. Accordingly any relief the Government obtained under Section 981(g)(5) no longer applies and the four documents at issue should be unsealed. In its brief the Government acknowledges that the basis for sealing in Section 985(g)(5) no longer applies—admitting the "U.S. Attorney's Office dismissed certain criminal cases associated with this civil forfeiture case and elected not to proceed on others."

Even so, the Government now proffers a series of different, ad hoc reasons that the documents should remain sealed, none of which justify continuing a seal granted under Section 981(g)(5), none of which it contends did not exist at the time it originally sought the seal, and none of which it raised when it sought sealing, despite its citation of Local Civil Rule 5(c) which requires, among other things, "a statement as to why sealing is necessary." In addition, despite citing what appear to be very limited aspects of the documents, such as the name of a particular target or cooperator, it contends that the entirety of the documents should remain under seal, stating in a particularly conclusory manner that there is no alternative such as redacting only particular arts of the document that might suffice. In short, the Government cannot switch horses to continue a seal it obtained under Section 918(g)(5), and even if it could, it has not offered significant countervailing interests sufficient to justify the sealing of the documents, much less in their entirety and indefinitely (which it now seeks).

## FACTUAL BACKGROUND

On April 2, 2020, agents with the Federal Bureau of Investigation (the "FBI") arrived unannounced (and unmasked in the midst of a statewide stay-at-home order due to the global COVID-19 pandemic) at the home of the Nelsons where they lived with their four young daughters. Before departing the residence, the FBI agents provided to Mr. Nelson a letter informing

2

him that he was the "target" of an ongoing federal investigation undertaken by the United States' Attorney's Office in the Eastern District of Virginia. The FBI provided Mr. Nelson with a separate letter informing him that the government intended to seize funds in certain accounts, which it alleged were traceable to the proceeds of criminal activity.

In May and June 2020, Plaintiff United States of America (the "Government") then seized the funds in from various bank accounts owned by the Nelsons and one bank account in which the Government alleges funds were "held on behalf of" the Nelsons by their then law firm. Complaint ¶¶ 3(a), (b), (d), (e), (f), (h), and (i); 48. Less than 48 hours after Nelson's attorneys met with the U.S. Attorney's Office to provide a two-hour presentation - the office seized funds from that law firm's trust account.[1] Compl. ¶46.

The next week- on June 5, 2020 - the FBI again sent agents unannounced to the Nelsons home, again in the height of the global COVID-19 pandemic. This visit was precipitated by the execution of a search warrant on the Nelsons' home, executed by an FBI agent who represented that he had traveled cross-country from Virginia by air to complete the exercise even though the FBI and U.S. Attorney's Office knew that a young girl with a preexisting medical condition leaving her at heightened risk for COVID-19 resided in the home. Upon its arrival, the FBI collected Mr. Nelson's phone, laptop and a few paper documents before leaving inside an hour. The affidavit supporting the issuance of that search warrant was filed under seal. Still, despite containing significant information about "cooperators" and targets and the investigation by the Government, it has since been unsealed and the Nelsons obtained a copy of it from PACER. *See* Case No. 2:20-mj-00289-MAT (W.D. Wash.) (Dkt. 1).

---

[1] A portion of those funds were remitted to the law firm; however, the Government retained the majority of the funds.

On November 9, 2020, the Government initiated the instant civil forfeiture action *in rem* against the seized funds pursuant to 18 U.S.C. § 981(a)(1), on the grounds that such property allegedly constituted proceeds of unlawful fraud and money-laundering related to a "fraudulent kickback scheme" between various unnamed real estate development companies and "certain former employees at Company #1." Compl. ¶ 7. Ultimately, the Government returned the vast majority of the funds it seized in connection with this proceeding. *See* Dkt. 56, 58, 59-62.

As part of these proceedings the Government sought a stay in light of a then ongoing criminal investigation. Dkt. 19. In support of that request to stay, and requests to continue the stay, the government submitted four documents which they requested be filed under seal: (1) a declaration by Special Agent Combs (Dkt. 22); (2) a May 2021 periodic status report (Dkt. 41), (3) a July 2021 second status report (Dkt. 44); and (4) a supplemental declaration by Special Agent Combs (Dkt. 48). .

Each time the Government offered essentially a single basis for that request: that there was an ongoing criminal investigation and that if those documents were not filed under seal it would undermine the then ongoing criminal investigation:

- "[T]he materials contained in Agent Combs's declaration . . . relate to an ongoing criminal investigation and divulging them would have severe negative consequences on the ongoing criminal investigation." Dkt. 20 at 4 (re Combs Decl.).

- [H]aving to divulge information to the claimants and to the public about the progress of the criminal investigation and how that criminal investigation will be negatively impacted by civil discovery would undermine the very relief the government is seeking in its motion to stay. Dkt. 47 ¶ 4 (re Supplemental Combs Decl.).

- "[S]ealing is necessary to avoid divulging details regarding an ongoing criminal investigation which would negatively impact that investigation, specifically with respect to witness/discovery issues." Dkt. 47 ¶¶ 7-8 (re Supplemental Combs Decl.).

4

- "The status report the government now intends to offer reveals both details of the ongoing investigation, as well as details protected by Fed. R. Crim. P. 6(e).": Dkt. 40 ¶ 2 (re May 5, 2021 Status Report).

- "As Special Agent Combs's declarations have made clear, divulging witness names in this ongoing investigation would indeed negatively impact the criminal investigation." Dkt. 50 at 5.

This Court's Orders sealing the documents acknowledged the basis of the Government's requests. For example, the May 5, 2021 Status Report noted "[d]ocuments that set forth sensitive nonpublic facts, including the identity of targets and witnesses *in an ongoing criminal investigation, warrant secrecy for the proper functioning of the investigation*. Dkt. 42 (citing *United States v. Appelbaum (In re United States)*, 707 F.3d 283, 286 (4th Cir. 2013)) (emphasis added).

The government recognized the highly disfavored nature of sealing documents filed in connection with judicial proceedings and the limited nature of the restrictions that should be applied—i.e., only as long as its ongoing investigation. In its motions the Government explicitly requested the sealing last only one year (which would cover what it anticipated was necessary to conduct the criminal investigation and make a decision, *see* Dkt. 35 at 22:2-10). The Government acknowledged the documents should be unsealed after that: "The government seeks to have the declaration remain under seal for a period of one year. Upon unsealing, the document may be made accessible to the general public on PACER." Dkt. 20 at 4; Dkt. 47 ¶ 8.

On March 31, 2022, the Government again sought to continue the seal on the documents for another two years, which the Court granted. Dkt. 63, 64. Again, the Government emphasized the basis for the motion to seal was the ongoing investigation:

- "The basis for those motions to stay centered on an ongoing criminal investigation related to the civil forfeiture case." Dkt. 63 ¶ 1.

- "Though each of the claims in this civil case has been settled, the closely-related criminal investigation remains ongoing in earnest." *Id.* ¶ 5.

- "In this case, unsealing the two declarations of S/A Combs and the two periodic status reports would reveal details of a criminal investigation in progress and details of related events occurring before the grand jury. Divulging the information contained in those documents would have severe negative consequences for the ongoing criminal investigation." *Id.*¶ 8.

Again, the Government concluded the motion by addressing the time for which sealing was sought, and acknowledged that afterward they would be available on PACER to the public: "The government seeks to have the declarations and status reports, which are Documents #22, 41, 44, and 48, remain under seal for an additional period of two years. Upon unsealing, the document may be made accessible to the general public on PACER" *Id.* ¶ 9.

This Court granted that motion, focusing on the integrity of the ongoing criminal investigation as the legitimate government interest justifying the stay:

> Upon consideration of the Motion, this Court finds that the continued sealing of the subject documents is necessary to avoid divulging sensitive details of an ongoing criminal investigation, including matters occurring before the grand jury. This Court also finds that the available alternatives that are less drastic than sealing would not suffice to protect the Government and the public's legitimate interest in maintaining the *integrity of the ongoing criminal investigation. That legitimate Government interest* outweighs at this time any interest in the disclosure of the material.

Dkt. 64 (emphasis added).

Despite the two years passing, the Government did not seek to renew the seal. On its own initiative the Court asked the parties to address the continuance of the seal. Dkt. 65.

## ARGUMENT

The Government sought, and obtained the right to file the four documents at issue under seal under 18 U.S.C. § 981(g)(5) because of an ongoing criminal investigation at that time. And it only sought to maintain the seal so long as that investigation was continuing. At no time when it filed any of the prior motions to seal did the Government express any concern about the need to

6

keep any information in the sealed documents sealed for any other reason, or that it needed to be sealed indefinitely. Again, once enough time had passed for the Government to complete its investigation, the Government acknowledged the documents should be unsealed and "accessible to the general public on PACER."

In fact, the Government again acknowledges it is not pursuing an investigation any longer, and instead "that this U.S. Attorney's Office dismissed certain criminal cases associated with this civil forfeiture case and elected not to proceed on others", Dkt. 66 at 4-5, including the ones against Carleton Nelson as he was expressly informed by the Government upon the dismissal of those pleas.

Now that the investigation has ended and the U.S. Attorney's Office has declined to proceed with prosecutions, Claimants and the public have a right to see the basis on which significant sums of money were seized from the Nelsons—most of which were returned to them—and to understand the information provided in the investigations, now that a decision not to prosecute the prior targets has been made by the Government.

Now instead the Government offers a series of post-hoc, varied justifications to continue the seal on documents that it has not previously raised. Nothing suggests that any of these purported reasons did not exist prior to seeking to seal these documents initially, and the Government offers no reasoning or justification for its attempt to cobble together reasons to seal these documents divorced from 18 U.S.C. § 981(g) at this late date. These newly proffered reasons, which seem particularly conclusory and in many cases separated from the law on sealing, appear to be merely an effort to shield from the public and the Claimants here that they should be able to see. In fact, no longer is the Government asking this Court to seal these documents for a limited time span. Instead, they appear to seek an indefinite seal, despite never seeking such relief before.

7

Hon. T. S. Ellis, III, *Sealing, Judicial Transparency and Judicial Independence*, 53 Vill. L. Rev. 939, 949 (2008) (noting "[p]ermanent sealing is both pernicious and unnecessary").

Importantly, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)).

The Government asserts that "there is not a right of access to an affidavit in support of a search warrant because proceedings for the issuance of search warrants are not open." Dkt. 66 (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)). But this is a civil forfeiture proceeding, not a closed search warrant proceeding.

The Government also cites a case contending a district court commits error "when it did not seal an order which referred to a criminal defendant's cooperation with the government." Dkt. 66 at 3 (citing *United States v. Doe*, 962 F.3d 139, 147 (4th Cir. 2020)). However, what the Government leaves out is that case involved a government cooperators in federal prison—a far different scenario than that here. *Id.* at 147-48 (noting "several of our sister circuits have held that protecting cooperating inmates serves a compelling interest under the First Amendment"). In reaching its holding the Fourth Circuit relied on the "the findings contained in a 2016 report by the Committee on Court Administration and Case Management of the Judicial Conference of the United States ("CACM Report"), which evaluated the need to protect government cooperators in federal prisons." *Doe*, 962 F.3d at 147. (4th Cir. 2020). Here, there is no factual predicate or basis to assert that there is any such need here or that any of the purported "cooperators" are particularly vulnerable federal prisoners or otherwise likely to be subjected to violence or retaliation. Similarly, the Court in *Harris* acknowledged the need to protect "the physical and psychological well-being

8

of individuals related to the litigation" but again, the Government only cites to this in the abstract as a basis to seal, with no actual evidence that there is any threat or actual danger to protect any unidentified individuals from.

The Government also made no efforts to maintain the seal on an affidavit of another FBI Special Agent it relied on in connection with a search warrant for the Defendants' home in Seattle, Washington. *See* 2:20-mj-00289-MAT (W.D. Wash) (Dkt. 1, attached as Exhibit A). The unsealed affidavit contains significant detail about cooperators, such as Kyle Ramstetter and Christian Kirschner, who previously entered pleas in criminal cases, which were ultimately dismissed, *see* 1:23-cr-27 (E.D. Va.) (Dkt. 20, 28); 1:23-cr-36 (E.D. Va.) (Dkt. 23, 33), as well as other cooperators or witnesses such as T.L., i.e., Timothy Lohrman, D.M., i.e., Danny Mulcahy, and J.R., i.e., Josh Richards, all former Northstar employees that provided information to the Government, and J.F., i.e., Jason Fogle, a former Amazon employee. To the extent any of the individuals identified in this affidavit are those the Government is now trying to "protect" by its sealing motion, it lacks any basis to do so since it allowed information about those individuals, and the information they provided to the Government, to enter the public sphere.

Further, these individuals, as well as many others who have provided information to the FBI have long been known to the parties involved in the various proceedings that relate to the subject of these forfeitures, through among other things, depositions taken of many of them. There is no allegation that any of these cooperators or witnesses have befallen any harm because of their role in communicating with the FBI, or assisting them—any claim that they are at risk of such conduct is completely baseless and is unfairly derogatory as to the targets of the Government's now abandoned investigation who have been identified in public—something the Government

9

appears to only want to afford to other individuals despite the significant impact their investigation and forfeiture of their now returned funds has caused for all of the identified targets.

The Government's claim that "[i]f the documents were unsealed, derogatory information about those then-targets would be available to the public without those then-targets having any outlet or opportunity to defend their reputation," *see* Dkt. 66 at 5, is particularly repugnant. Given that it did not give Mr. Nelson or Mr. Kirschner such an opportunity in public and simply made generic statements that the Government "declined to prosecute other alleged coconspirators in this scheme" without specifying who those individuals were in public. Rampant, unsupported speculation of potential harm to individuals who provided information to the Government in connection with its investigation cannot support sealing of these documents.

In any event, embarrassment or harm to reputation should not serve as a basis to block the public's right of access. *Scott v. Roman Cath. Church Diocese of Baton Rouge*, No. CV 19-659-SDD-SDJ, 2020 WL 7083973, at *2 (M.D. La. Nov. 18, 2020) (Courts have found that harm to reputation, conclusory allegations of injury, and retaliation against litigious employees by employers are all insufficient to warrant sealing a case"), *report and recommendation adopted*, No. CV 19-659-SDD-SDJ, 2020 WL 7081596 (M.D. La. Dec. 3, 2020); *Reed v. Kiran Transp., LLC*, No. 1:22-CV-00183, 2023 WL 5186851, at *2 (E.D. Tenn. Aug. 11, 2023); *see also* Hon T.S. Ellis, III, 53 Vill. L. Rev. at 946 ("A common, although not always explicit, reason proffered for sealing is a party's fear of embarrassment. It is pellucidly clear that this reason cannot justify sealing; the public's rights or access should never be outweighed by the risk of embarrassment or harm to reputation.") (cited in *Howard v. State*, 291 P.3d 137, 144 (Nev. 2012)).

Finally, the Government appears to assert that discussions about negotiations with the claimant (whether Nelson or Kirschner) about privilege should justify sealing the July 21, 2021

10

status report. First, both Nelson and Kirschner would like the documents unsealed whatever the Government's concerns about Nelson or Kirschner's privilege claims.[2] Second, what the Government does not tell the Court is that there was a fairly broad waiver of privilege due to advice of counsel issues, thus this argument is particularly specious even if the Government were the protector of Nelson's privilege.

The individuals who had their funds taken and whose lives were turned upside down by this investigation (without even having been convicted), are entitled to see the documents as is the public, particularly where there has been great interest in the Government's carrying out of this investigation, *see https://www.seattletimes.com/business/amazon/doj-withdraws-guilty-pleas-in-alleged-amazon-real-estate-fraud-scheme/ (last visited April 18, 2024); https://www.washingtonpost.com/dc-md-va/2024/01/11/doj-drops-amazon-fraud-probe-virginia/* (last visited April 18, 2024).[3] It is also well documented that there is much interest in the civil forfeiture process, as noted by a recent OIG report for the Department of Justice:

> While the Department views asset forfeiture as an important law enforcement tool, concerns have been raised about its use. Advocates of asset forfeiture reform, including Members of Congress and public interest groups, have expressed concerns that the ability to use forfeiture revenues to fund law enforcement activities may the Department and state and local law enforcement to use asset seizure and incentivize forfeiture beyond the purpose of deterring and punishing criminal conduct and in a manner that creates risks to civil liberties. This concern is heightened because Department law enforcement officers have the authority to seize and forfeit cash or property without independent judicial oversight and without charging the owner or possessor of the cash or property with a crime.

---

[2] Undersigned had discussions with counsel for the Government about these documents prior to filing this brief and was never asked if the claimant's own privilege (something that presumably would be properly directed to the claimant) should justify sealing the July 2021 status report.

[3] It should also be noted that in the related civil litigation instituted by Amazon, which is now before the Fourth Circuit on appeal after the Court granted summary judgment to Defendants against Amazon on the vast majority of the claims in that case, Amazon regularly cites to the civil forfeiture proceedings as somehow relevant to its own claims.

54042285 v1

*See https://oig.justice.gov/reports/2017/e1702.pdf.* Where there is some judicial oversight, as is the case in filed civil forfeiture proceedings, it is an important public interest that government filings in those proceedings not be further shrouded by sealing when there is no active related criminal investigation ongoing.

In sum, the Court should deny the Government's request to permanently seal the four records it previously filed under seal pursuant to 18 U.S.C. § 981(g)(5) now that there is no ongoing criminal investigation and no pending criminal trial.

Even if the Court were inclined to consider sealing the information in one or more of the four documents, complete sealing is not justified. In determining whether to seal documents, "the court should consider less restrictive 'alternatives to sealing [that] provide an adequate record for review' and should 'state the reasons for its decision [with] specific findings.' " *United States v. Harris*, 890 F.3d 480, 492 (4th Cir. 2018) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)). Such alternatives "may include giving the public access to some of the documents or releasing a redacted version of the documents that are the subject of the government's motion to seal." *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 294 (4th Cir. 2013); *Baltimore Sun Co.*, 886 F.2d at 66 ("This ordinarily involves disclosing some of the documents or giving access to a redacted version."). For example, in *Harris* the Fourth Circuit found appropriate to redact the names of the defendant's wife and children, as well as the extent of his cooperation with law enforcement from his sentencing memorandum. *Harris*, 890 F.3d at 492. Here the Government does not sufficiently explain why even if some of the information were potentially subject to sealing, the entire document must be withheld. Rather, it makes conclusory remarks that redacting the name is not enough because the identification might be gleaned from the description of the information provided. Even assuming that is the case, it does not explain

why the remaining portions of the document must be redacted or kept form the public view. For example, the unsealed affidavit in the Western District of Washington cited above is 44 pages long, and contains large swaths of information that do not relate at all to a particular cooperator, or that relate to cooperators whose identities are well known because, for example they entered a plea agreement with the government and filed statements in support of those pleas. The Court should reject the Government's attempt to use what appear to be limited references to purportedly sensitive information to justify maintaining a seal on entire documents (which of course the Nelsons dispute is proper at all).

## CONCLUSION

For these reasons, the Nelsons respectfully request an order that the seal be lifted on the four documents presently under seal here; that in the alternative if any of the information identified by the Government justifies protection, that only that limited information be redacted from the particular document in which it is found; all other and further relief as this Court deems just and proper. Again, the Nelsons have confirmed that Claimants Kirschner and E2M Properties, LLC do not oppose the request that the four documents be unsealed.

April 18, 2024                          **BURR & FORMAN LLP**

*/s/ Rachel Friedman*
Rachel Friedman (VA Bar #93898)
420 North 20th Street, Suite 3400
Birmingham, AL  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rfriedman@burr.com

J. Alex Little, IV (TN Bar No. 29858) (*pro hac vice*)
222 2nd Ave. S., Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3200
alex.little@burr.com

13

*/s/ Adam R. Smart*
Adam R. Smart (FL Bar No 1032572) (*pro hac vice*)
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
Telephone: (904) 232-7200
asmart@burr.com

*Attorneys for Carleton Nelson and Amy Nelson*

14

54042285 v1